**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Dixie Salcido,<br>      Plaintiff,<br>vs.<br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br>      Defendant. | CIV-13-1700-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Rebecca Dixie Salcido's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income in May 2010, alleging disability beginning February 1, 2010. (Transcript of Administrative Record ("Tr.") at 26, 273-81.) Her applications were denied initially and on reconsideration. (Tr. at 181-84, 189-95.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 196.) A hearing was held on November 16, 2011. (Tr. at 43-95.) The record was left open and a subsequent hearing was held on March 27, 2012. (Tr. at 96-128.) On April 9, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 23-42.) The Appeals Council denied Plaintiff's request for review (Tr. at

1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 1, 2010 – the alleged onset date. (Tr. at 28.) At step two, he found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, pulmonary embolism, blood clots, diabetes mellitus, gastroesophageal reflux disease, sleep apnea, hypertension, obesity, post right knee surgery (5/10), arthritis, low back pain, and carpal tunnel syndrome (right). (Tr. at 28-30.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 30.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: must be allowed to sit or stand alternatively at will provided she is not off task more than 10% of the work period; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; can frequently handle objects, that is, gross manipulation with the right; can frequently finger, that is, fine manipulation of items no smaller than the size of a paper clip with the right; can frequently feel with the right; must avoid moderate exposure to excessive noise, irritants such as fumes, odors, dust, and gases, chemicals, use of moving

1  machinery, and exposure to unprotected heights."[1] (Tr. at 30-34.)  The ALJ determined that
2  Plaintiff is unable to perform any past relevant work, but that considering Plaintiff's age,
3  education, work experience, and residual functional capacity, there are jobs that exist in
4  significant numbers in the national economy that Plaintiff can perform.  (Tr. at 34-36.)

5  Therefore, the ALJ concluded that Plaintiff "has not been under a disability ... from
6  February 1, 2010, through the date of [his] decision."  (Tr. at 36.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) failing to properly consider her subjective complaints.  Plaintiff requests that the Court remand for determination of benefits.

**A.    Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence related to her physical impairments.  Specifically, Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Sunil K. Jain, M.D., relying instead upon the report of consultative examiner Elizabeth Ottney, D.O., and opinions of the state agency physicians.

"The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight."  Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

1    2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's
2    opinion is given controlling weight when it is "well-supported by medically accepted clinical
3    and laboratory diagnostic techniques and is not inconsistent with the other substantial
4    evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand,
5    if a treating physician's opinion "is not well-supported" or "is inconsistent with other
6    substantial evidence in the record," then it should not be given controlling weight. Orn v.
7    Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

8          If a treating physician's opinion is not contradicted by the opinion of another
9    physician, then the ALJ may discount the treating physician's opinion only for "clear and
10   convincing" reasons. See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830). If
11   a treating physician's opinion is contradicted by another physician's opinion, then the ALJ
12   may reject the treating physician's opinion if there are "specific and legitimate reasons that
13   are supported by substantial evidence in the record." Id. (quoting Lester, 81 F.3d at 830).

14         Since the opinion of Dr. Jain was contradicted by consultative examiner Dr. Ottney;
15   state agency physicians D. Rowse, M.D. and Marilyn Orenstein, M.D.; as well as, other
16   objective medical evidence, the specific and legitimate standard applies.

17         Historically, the courts have recognized the following as specific, legitimate reasons
18   for disregarding a treating or examining physician's opinion: conflicting medical evidence;
19   the absence of regular medical treatment during the alleged period of disability; the lack of
20   medical support for doctors' reports based substantially on a claimant's subjective complaints
21   of pain; and medical opinions that are brief, conclusory, and inadequately supported by
22   medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
23   v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v.
24   Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

25         The ALJ considered the following objective medical evidence of Plaintiff's physical
26   impairments in his determination of Plaintiff's residual functional capacity assessment.

27         In July 2010, Dr. Ottney examined Plaintiff. (Tr. at 545-51.) Plaintiff reported a
28   history of obstructive pulmonary disease; a recent pulmonary embolism related to right knee

- 5 -

1  surgery; and low back pain, as well as, insulin-dependent diabetes mellitus without
2  significant complications.  She also reported "perform[ing] childcare duties," and
3  examination revealed limited lumbar spine ranges of motion, but also essentially normal
4  respiratory functioning and effort with only slight dyspnea with exertion; normal extremity
5  strength throughout, including grip strength; the absence of lower extremity instability or
6  atrophy; normal balance; and the ability to ambulate without assistance.  Right knee x-rays
7  revealed findings compatible with degenerative arthropathy.  Dr. Ottney concluded that
8  Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand
9  and/or walk two hours; sit without restriction; climb ramps/stairs occasionally; and perform
10 work allowing limitations in exposure to heights, moving machinery, chemicals, and
11 dust/fumes or gases, and not requiring climbing ladders/ropes/scaffolds.  (Tr. at 545-51).

12       Shortly thereafter, after having reviewed the objective medical evidence of record,
13 state agency reviewing physicians, Drs. Rowse and Orienstein, concluded that Plaintiff
14 retained the physical residual functional capacity to lift and/or carry 20 pounds occasionally
15 and 10 pounds frequently; stand and/or walk four hours and sit about six hours in an
16 eight-hour day; push/pull within her lifting capacity; climb ramps/stairs, balance, stoop,
17 kneel, and crouch occasionally; and perform work allowing avoidance of even moderate
18 exposure to fumes, odors, dusts, gases, poor ventilation, or hazards such as machinery or
19 heights, and any crawling or climbing of ladders/ropes/scaffolds; and that she had no visual,
20 manipulative, or other environmental limitations.  (Tr. at 139-42, 150-53, 162-65, 175-78.)

21       Dr. Jain examined Plaintiff in March 2011 for complaints of neck and lower back
22 pain. (Tr. at 796-97.) Plaintiff denied chest pain, yet examination revealed decreased ranges
23 of motion of the cervical and lumbar portions of the spine. Dr. Jain recommended continued
24 current treatment.  (Tr. at 796-97.)  In March 2012, Dr. Jain treated Plaintiff with oral
25 medication and upper and lower spinal medication injections with similar examination
26 findings and reports by Plaintiff. (Tr. at 763-95, 871-82, 884-88.) He also performed upper
27 extremity electodiagnostic studies revealing evidence consistent with chronic, moderate
28 carpal tunnel syndrome; and lower extremity electodiagnostic studies revealing evidence

1    consistent with motor sensory polyneuropathy.  Further, he obtained a cervical spine MRI
2    revealing a stable cervical spine and cord without convincing evidence of significant cord
3    abnormality, with mild disc bulging at multiple levels without central spinal canal or neural
4    foraminal stenosis, (Tr. at 750-51), and an abdominal CT scan revealed, among other
5    findings, normal lung bases, and a mild to moderate lumbar spine abnormalities without
6    destructive lesions (Tr. at 748-49).  Plaintiff reported traveling out of state to visit her ill
7    father, with increased neck pain, and noted a cervical spine medication injection had helped
8    her significantly in the past. (Tr. at 772.)  In statements dated December 27, 2011, Dr. Jain
9    indicated that Plaintiff had significant physical functional limitations, (Tr. at 815-17), and
10   had moderately severe pain sufficiently severe as to interfere with attention and concentration
11   (Tr. at 818-19).
12          In his evaluation of the objective medical evidence, the ALJ first discussed Plaintiff's
13   medical records beginning July 2010, noting that Plaintiff's sleep apnea is treated effectively
14   with CPAP and that her sleep study was determined normal.  (Tr. at 32, 545-51, 559-80.)  In
15   May and June 2010, it was reported that Plaintiff was very active at work, but that she had
16   poor exercise habits, (Tr. at 32, 559-80), and in July 2010, an MRI of the lumbar spine
17   showed only mild to moderate stenosis and a chest x-ray was normal in September 2010 (Tr.
18   at 32, 581-97).  The ALJ found that in March 2011, decreased vision was reported and
19   assessed as mild diabetic retinopathy, but there was no treatment.  (Tr. at 32, 640-47.)  In
20   October 2011, Plaintiff's sleep apnea was improved and she was doing well with all issues
21   including asthma and weight loss.  She was encouraged to continue exercise, diet
22   improvement, and weight loss and to follow-up in 3-4 months. (Tr. at 32, 657-77.)  Knee x-
23   rays in April 2011 showed only mild degenerative joint disease of the knees and in June 2012
24   physical examination was normal. (Tr. at 32, 648-56.)  In August 2011, she was walking 3-4
25   kilometers per week. (Tr. at 32, 712-17.)  And, in December 2011, orthopedic surgeon notes
26   reported back pain but stable disc space narrowing and that Plaintiff was using a cane even
27   though physical examination was almost normal.  (Tr. at 32, 809-14.)
28

1     The ALJ additionally documented that in January 2012, spinal stenosis was reported
2  in the lumbar region and a left L1-2 decompression was performed. Some bladder and bowel
3  incontinence was also reported during that time. (Tr. at 32, 834-38.) A month later Plaintiff
4  was doing "very well" and walking more than she did prior to surgery. She denied weakness,
5  radiating pain to her leg, or tingling. She reported some increased pain after a fall and was
6  referred for physical therapy and pain management, and in February 2012 it was noted her
7  pain was out of proportion to physical findings. (Tr. at 32, 820-38.)

8     The ALJ noted that in March 2012, pain management reported no side effects from
9  medications and that Plaintiff only had occasional incontinence. (Tr. at 32, 871-88.)
10 Previously, in December 2011, Plaintiff had an almost normal physical examination and was
11 instructed to exercise to improve her condition. And, in February 2012, she was reported as
12 modified independent for activities of daily living and household mobility. In March 2012,
13 rheumatoid arthritis was reported as well as carpal tunnel syndrome in the right hand. (Tr.
14 at 32, 839-70.)

15    Then, the ALJ analyzed Dr. Ottney's assessment coupled with the opinions of state
16 agency physicians Drs. Rowse and Orienstein. (Tr. at 33, 545-51, 139-42, 150-53, 162-65,
17 175-78.) After documenting Dr. Ottney's findings (noted above), the ALJ stated, "[t]his
18 opinion is given great weight because it is consistent with the totality of evidence. Similarly
19 with the opinions of State Agency reviewers Dr. Rowse and Dr. Orienstein in August and
20 October 2010. Ex. 5A; 7A. The record indicated the claimant's physical impairments allow
21 her to perform work at the sedentary level with the limitations in the residual function
22 capacity assessment above." (Tr. at 33.)

23    Next, in examining Plaintiff's physical impairments, the ALJ discussed Dr. Jain's
24 opinion. (Tr. at 34, 815-19, 800, 748-62.) The ALJ found that the objective evidence of
25 record does not support Dr. Jain's opinion. (Tr. at 34.) The ALJ recited to specific instances
26 in the record finding that an October 31, 2011 MRI reported only mild disc bulging without
27 central canal spinal stenosis or neural foraminal stenosis. (Tr. at 34, 800.) Moreover, the
28 ALJ found that "it was specifically reported that the cervical spine and cord appeared stable

1 and improved since April 2011 findings and there was 'no convincing evidence for
2 significant cord syrinx, intramedullary mass, or other abnormality.'" (Tr. at 34.) According
3 to the ALJ, Dr. Jain's opinion was also inconsistent with Plaintiff's physical examination
4 results in March 2011 (dated as November 2011 in the ALJ's decision), and the ALJ also
5 stated that there is nothing in the record to support the opinion that occasional handling and
6 no fine manipulation limitations are required. (Tr. at 34, 748-62.) Lastly, the ALJ stated,

> The opinion is also inconsistent with itself. Although it gives total environmental limitations, she swims and smokes. Although it gives total postural limitations, x-rays of the knee showed only mild degenerative joint disease and moderate degeneration of the lumbar spine. I also note that this physician gave environmental restrictions which are in no way associated with the claimant's alleged impairments and find that this compromised the entire report.

(Tr. at 34.)

The Court finds that the ALJ properly weighed the medical source opinion evidence related to Plaintiff's physical impairments, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Jain's assessment. The ALJ discredited the medical opinion due to multiple inconsistencies with the evidence as a whole, as well as, lack of supporting clinical findings. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the incongruity between doctor's questionnaire responses and her medical records provides a specific and legitimate reason for rejecting the opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes indicate reasons why [the physician would limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"). Therefore, the Court finds no error.

\\\

\\\

### B.     Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted).  General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2] The ALJ also considers "the claimant's work record and observations of treating and

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair, 885 F.2d at 603. The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily

examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

At Plaintiff's hearing on November 16, 2011, Plaintiff testified that her primary disorder causing inability to work was a back disorder causing pain for which she took oral medication that was somewhat effective, used a transcutaneous electrical nerve stimulator (TENS) unit, had undergone spinal medication injections, and used an unprescribed cane or (currently) a walker to ambulate. (Tr. at 56-58, 62-68, 71-72, 84, 87.) She also testified that she had bilateral upper extremity disorders causing numbness and pain, (Tr. at 59, 68); bilateral knee disorders status post right knee surgery, (Tr. at 56-57, 61-62, 75-76); a history of a pulmonary embolism for which she had taken anticoagulant medication but was no longer taking such, (Tr. at 74); asthma causing shortness of breath treated with medication, including using an inhaler and a nebulizer, and did not very often cause inability to "get air," (Tr. at 69-71, 74-75); and sleep apnea for which she used CPAP device, (Tr. at 60). She further testified that she performed limited household chores with effort. (Tr. at 77-78.)

At the second hearing held on March 27, 2012, Plaintiff testified that she had undergone lumbar spine surgery with residual bowel/bladder difficulty that was not being treated, pain, and balance difficulty, and that she used a cane or a walker to ambulate. (Tr. at 100-05, 111-13.) She also testified that she had right carpal tunnel syndrome causing grip difficulty but not preventing lifting small things, for which she was not being treated other than with medication for pain. (Tr. at 106-07, 113, 115.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made sufficient credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding her pain and limitations. Although the ALJ recognized that Plaintiff's medically determinable

---

transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1    impairments could reasonably be expected to cause the alleged symptoms, he also found that
2    Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
3    symptoms were not fully credible. (Tr. at 27-31.)

4    In his evaluation of Plaintiff's credibility, the ALJ first referenced the objective
5    medical evidence (noted above) stating specifically, "[t]he credibility of the claimant's
6    allegations regarding the severity of her symptoms and limitations is diminished because
7    those allegations are greater than expected in light of the objective evidence of record. The
8    medical evidence indicates the claimant received routine conservative treatment for her
9    impairments. The positive objective clinical and diagnostic findings since the alleged onset
10   date ... do not support more restrictive functional limitations than those assessed herein." (Tr.
11   at 31-32.) Further, citing to the record, the ALJ found that in February 2012, one of
12   Plaintiff's treating physicians noted that Plaintiff's pain was "out of proportion to the
13   physical findings (Exhibit 30F)," and another treating physician indicated that in March
14   2012, that Plaintiff was not experiencing any side effects from her medications (Exhibit
15   33F)." (Tr. at 31); see Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record
16   is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted);
17   Batson v. Comm'r of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective
18   medical evidence supporting claimant's allegations supported ALJ's finding that claimant
19   was not credible); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (evidence of
20   "conservative treatment" is sufficient to discount a claimant's testimony regarding severity
21   of an impairment).

22   The ALJ additionally analyzed Plaintiff's "somewhat normal level" of daily activities
23   and interaction finding that said activities also reduced Plaintiff's credibility. (Tr. at 31-32.)
24   "[I]f the claimant engages in numerous daily activities involving skills that could be
25   transferred to the workplace, an adjudicator may discredit the claimant's allegations upon
26   making specific findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947
27   F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d
28

1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than alleged). The ALJ stated:

> The claimant admitted activities of daily living including walking up to a mile, taking her kids to the pool, cooking, using the computer, and visiting her sister daily. Ex. 7F. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities undermined the credibility of the claimant's allegations of disabling functional limitations. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. ...

(Tr. at 31.) While not alone conclusive on the issue of disability, an ALJ can reasonably consider a claimant's daily activities in evaluating the credibility of his subjective complaints. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility determination based in part of the claimant's abilities to cook, clean, do laundry, and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (upholding ALJ's credibility determination based in part on the claimant's abilities to cook, clean, shop, and handle finances).

Lastly, the ALJ found that Plaintiff's credibility was diminished by the fact that she was terminated from her last job – and did not have to stop working due to her impairments. He also noted various inconsistencies in the record finding that Plaintiff made several misrepresentations to consultative examiners. (Tr. at 32.)

In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's allegations not entirely credible. While perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error.

\\\

\\\

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income in this case.  Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

DATED this 27th day of January, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge